# Veterans of Foreign Wars of the United States v. The Veterans Club of Everett, Inc.

*Harpur Tobin, R. Merle Heffner* and *Ellis William Van Horn, Jr.*, for rule.

*J. Pennington Straus* and *Alvin L. Little*, contra.

FETTERHOOF, J., twentieth judicial district, specially presiding, May 28, 1948.—A charter was duly granted by the Court of Common Pleas of Bedford County August 27, 1934, incorporating "The Veterans of Foreign Wars Club of Hopewell, Inc.". By a petition presented to the same court a final decree was entered July 20, 1936, amending the charter in section 3 as to the purpose of the corporation and section 8 as to the membership thereof.

On September 4, 1946, the court entered a decree amending the charter in its name from "The Veterans of Foreign Wars Club of Hopewell, Inc." to "Veterans Club of Everett". Also the location and postoffice address was changed from Hopewell to Everett, Bedford County, Pa. The purpose for which the corporation was formed was again changed as well as the membership thereof and the powers of the members enlarged.

The aforesaid application for charter and its several amendments were all duly recorded in the office for recording deeds for Bedford County, Pa.

On June 10, 1947, the Veterans of Foreign Wars of the United States filed a petition for a rule on the Veterans Club of Everett, Inc., formerly The Veterans of Foreign Wars Club of Hopewell, Inc., to show cause why the decree of this court dated September 4, 1946, amending the charter of TheVeterans of Foreign Wars Club of Hopewell, Inc., by changing its name and taking it out of the jurisdiction of the Veterans of Foreign Wars of the United States, as set forth in its original charter, should not be set aside; and also why the decree of this court dated July 20, 1936, amending the charter of The Veterans of Foreign Wars Club of Hopewell, Inc., should not be set aside. Said rule was allowed and made returnable July 27, 1947.

On July 10, 1947, respondent filed an answer to the petition and also a motion to strike off the rule.

On July 27, 1947, the Department of Pennsylvania, Veterans of Foreign Wars of the United States, filed a petition and upon motion a rule was granted to show cause why it should not be permitted to intervene as a party complainant, which rule we allowed and made returnable forthwith.

Argument was had before us on the motion to strike off the rule and on the petition for a rule to intervene, on July 27 and 28, 1947. We refused the motion to strike off the rule and made absolute the rule to show cause why the intervention should not be allowed. The matter came on for hearing upon complainant's petition and respondent's answer and testimony was taken August 12 and 13, 1947.

Upon the conclusion of taking testimony the case was set down for argument and after hearing the arguments of counsel and the submission of their briefs, the matter is now before us for determination.

*Findings of fact*

1. The Veterans of Foreign Wars of the United States was organized on September 14 to 17, 1914.

2. The Veterans of Foreign Wars of the United States was incorporated by an act of Congress of the United States approved May 28, 1936.

3. The Department of Pennsylvania Veterans of Foreign Wars of the United States was granted a charter on December 20, 1920, as a subordinate unit of the Veterans of Foreign Wars of the United States.

4. The subordinate unit Veterans of Foreign Wars of the United States, Department of Pennsylvania, was granted a nonprofit corporation charter by the Court of Common Pleas of Dauphin County on June 5, 1939.

5. On August 27, 1934, a nonprofit corporation charter was granted by the Court of Common Pleas of Bedford County, Pa., to The Veterans of Foreign Wars Club of Hopewell, Inc.

6. On July 20, 1936, the Court of Common Pleas of Bedford County, Pa., entered a decree amending the charter of defendant corporation.

7. On September 4, 1946, the Court of Common Pleas of Bedford County, Pa., entered a decree again amending the charter of defendant corporation.

8. The original application for charter as set forth in paragraph 5 above and the several amendments thereto as referred to in paragraphs 6 and 7 were in proper form and the decrees entered upon the same were in accordance with the law relating to nonprofit corporations.

9. Defendants in their original application for charter and the several amendments thereto substantially complied with the nonprofit corporation law requirements and have a legally constituted corporation.

10. The advertisement in the Bedford Inquirer announcing when the application for approval of The Veterans Club of Everett amendment would be presented to the court as of September 14, 1946, whereas

it was to be presented September 4, 1946, was a typographical error, and there being no bad faith or fraud committed, this error does not invalidate the charter.

11. No legal action was instituted by the Veterans of Foreign Wars of the United States or by the Veterans of Foreign Wars of the United States, Department of Pennsylvania to attack the decree approving the amendment of the charter of defendant dated July 20, 1936, until June 10, 1947, the time of filing the petition in the instant case.

12. No legal action was instituted by the Veterans of Foreign Wars of the United States or by the Veterans of Foreign Wars of the United States, Department of Pennsylvania, to attack the decree approving the amendment of the charter of defendant dated September 4, 1946, until June 10, 1947, the time of filing the petition in the instant case.

13. That in obtaining the decree of court approving the original charter as well as the several decrees of the court approving the amendments thereto, there was no fraud committed on the court either by omissions or commissions by defendants or anyone for them which would invalidate their charter.

## Discussion

Defendant contends that plaintiff is attacking its charter and that the proper and exclusive remedy for revoking the franchise right or charter privilege is by a quo warranto proceedings instituted by the Commonwealth. This question raised by defendant is so vital that we shall first devote our attention to it. If defendant is correct, then it would not be necessary to proceed any further and discuss the real heart of the controversy.

A corporation is an artificial being created by law, composed of individuals united in a common name and having succession while it exists.

Chief Justice Marshall in the celebrated Dartmouth College case, 4 Wheaton 518, stated: (p. 636)

"A corporation is an artificial being, invisible, intangible, and existing only in contemplation of law. Being the mere creature of law, it possesses only those properties which the charter of its creation confers upon it, either expressly, or as incidental to its very existence. These are such as are supposed best calculated to effect the object for which it was created."

A corporation may be created and exercise corporate powers only by authority, express or implied, from the sovereign powers, that is, only by or under the authority of an act of the legislature: 18 C. J. S. 404, §23.

Amendments to charters of a corporation of the first class are authorized under the Corporation Act of April 29, 1874, P. L. 73, 15 PS §405, which provides that "after decree (of the court) made and such amendments are recorded the same shall be deemed and taken to be a part of the charter of said corporation". The defendant here is a nonprofit corporation of the first class and the above act was amended July 17, 1935, P. L. 1130, 15 PS §2851-701-708, which act authorized amendments of articles and set forth the manner of making such amendments by the court.

So far as the record goes the several amendments in this case were properly authorized by the court and having been severally recorded, they are a part of the charter of the corporation. Under the Nonprofit Corporation Law of May 5, 1933, P. L. 289, 15 PS §2851-209, it is provided as follows:

"The articles of incorporation, approved by a judge and recorded by the recorder of deeds, shall be conclusive evidence of the fact that the corporation has been incorporated, but proceedings may be instituted by the Commonwealth to dissolve, wind up and terminate a corporation which should not have been formed under this act or which has been formed without a substantial compliance with the conditions prescribed in this act as precedent to incorporation."

The amendments are a part of the charter of the corporation and plaintiffs are attacking the charter by rule to show cause why such amendments should not be set aside. As we understand the contention of plaintiffs they do not want to *dissolve, wind up,* or *terminate* the original corporation known as "Veterans of Foreign Wars Club of Hopewell, Inc.", but merely set aside the amendments and have the corporation exist as originally incorporated. The amendments now being a part of the charter, if we make the rule upon defendants absolute, it can be argued that the Veterans Club of Everett, Inc. is being dissolved, wound up, or terminated. The Veterans of Foreign Wars Club of Hopewell, Inc., so far as its title is concerned no longer exists and we would bring into existence a new corporation, or at least change the name of the present one without complying with the proper legal formalities of our Nonprofit Corporation Law. The articles of incorporation were approved by a judge and duly recorded. Under the above act this is conclusive evidence of the fact that the corporation, which includes the amendments, has been incorporated.

It has been argued by plaintiff that the court in the instant case has jurisdiction now to set aside the amendments referred to without the Attorney General of the Commonwealth of Pennsylvania instituting a proceeding in the nature of a quo warranto. There is a line of cases which have uniformly held the only proper proceeding to attack a charter is that of quo warranto.

In Hooven Mercantile Co. v. Evans Mining Co., 193 Pa. 28, creditors of defendant company attacked the validity of its charter on the ground that the stockholders had never paid in the required 10 percent of the capital and that the certificate of organization failed to state that the stock of the company was issued for property taken. Justice Green, on page 33 in his opinion, stated:

"But even if the objections to the validity of the organization were sustained, these parties have no standing to raise the question of the validity of the organization. We have many times decided that such questions can only be raised by proceedings at the instance of the Attorney General in the nature of a quo warranto to forfeit the charter. The doctrine is so familiar that a citation of authorities is not necessary." Also 11 Pa. Standard Practice 253, §20.

In the Thirteenth & Fifteenth Streets Passenger Railway Co. v. Broad Street Rapid Transit Street Railway Co., 219 Pa. 10, in a per curiam opinion the court held:

"This is a bill in equity to enjoin the defendant company from proceeding under its charter to lay railway tracks on Broad Street in the City of Philadelphia. The basis of the relief sought was the invalidity of the franchise purported to be granted. The learned judge below rightly held that this was in effect a quo warranto to challenge the validity of the charter itself and could not be sustained by a private relator. He therefore dismissed the bill."

In the case of Andel v. Duquesne Street Railway Co., 219 Pa. 635, in which plaintiff brought a bill in equity for an injunction, the Supreme Court in disposing of the fourth prayer of the bill which raised the question of the validity of the extension and branches of the railway which were secured in the manner provided by statute, the court stated in dismissing the bill:

"The validity of a charter, the forfeiture of charter rights, which includes branches and extensions, can only be inquired into or declared on a writ of quo warranto sued out by the state at the suggestion of the attorney general: Western Pennsylvania Railroad Company's Appeal, 104 Pa. 399; Windsor Glass Co. v. Carnegie Co., 204 Pa. 459."

In Commonwealth ex rel. v. American Baseball Club of Philadelphia, 290 Pa. 136, which was an action upon

a petition for a quo warranto the Attorney General sought to have defendant ousted from any right or authority to play baseball on Sunday and asked for a perpetual injunction. Defendant contended that as the Act of 1894 provided a penalty of four dollars for a violation of said act, it was the sole penalty and no quo warranto proceedings could be brought. The court held that, although defendant could be ousted from all of its franchises for a wilful misuser thereof, it could likewise be ousted from some of them. Justice Schaffer, speaking for the Supreme Court, stated:

"A corporation may be ousted from the exercise of powers not granted and powers forbidden to be exercised (Act of June 14, 1836, section 11, P. L. 621; 22 R. C. L. 672; High's Extraordinary Legal Remedies (3d ed.) sections 647, 648; Com. v. Delaware and Hudson Coal Co., 43 Pa. 295; Com. ex rel. v. Northeastern Elevated Ry. Co., 161 Pa. 409) and the way to oust it is by writ of quo warranto: Kishacoquillas Turnpike Road Co. v. McConaby, 16 S. & R. 140."

The case of National Endowment Co., 142 Pa. 451, is one wherein the court of common pleas upon its own motion issued a rule to show cause why the order approving its charter should not be revoked, alleging said corporation did not come within provisions of the Act of 1874 and that the court was led into an error by certifying its purposes were lawful and not injurious to the community. The rule was made absolute, revoking the charter, and upon appeal the Supreme Court in a per curiam opinion stated as follows:

"We are in no doubt of the power of the court to revoke this alleged charter. It never was a charter. It was not authorized by any act of assembly, and is absolutely void. Had it been authorized by the act of 1874, it could only be reached by a quo warranto. But a void charter confers no rights, and the court below was justified in revoking the order which gave it an apparent validity."

In the instant case there is no contention, and in fact there is no doubt but what the original charter and the amendments thereto are lawful and authorized by the Nonprofit Corporation Law.

Under the Act of June 14, 1836, P. L. 621, 12 PS §§2022, 2023, relative to actions of quo warranto and the bringing of such action at the instance of the Attorney General, it has been held that the language of this act makes no distinction between corporations of the first and second class under the Act of April 29, 1874, P. L. 73: Consolidated Stock Exchange of Philadelphia, 31 Pa. C. C. 226.

In this case it was stated the acts of a corporation could not be challenged by the court entering suo motu a rule to show cause why the decree granting the corporate charter should not be annulled, pointing out that either a writ of sci. fa. to repeal the letters patent or the writ of quo warranto were the remedies available. In the course of his opinion Attorney General Carson stated:

"Without expressing a definite opinion upon this point, and without committing myself or my successors to interference in local cases, I prefer in the present case, where the charge is that a corporation chartered by a court is usurping the franchises of a corporation chartered by the governor, to exercise the power which I have, and which, were it the case of a corporation chartered by the governor, belongs exclusively to me or to the deputy attorney general."

In the case of Eighth Ward Club of Upper Darby, 29 Del. Co. 5, Judge Broomall on January 12, 1939, directed a rule issued to show cause why the charter should not be revoked and when the matter came on for argument held that the method to declare the charter of a corporation forfeited is by a writ of quo warranto.

In the case of Christ's Church Charter, 8 Pa. C. C. 28, a petition was presented to the court of common pleas

by persons opposed to the granting of the charter asking for its revocation because of its omission of a provision limiting the yearly income of the corporation other than from real estate. The court held:

"After proceedings and decree, regular in form, an alleged substantial defect in a charter can only be set up by quo warranto at the suit of the attorney general," and the rule was refused.

The case of Travaglini et al. v. Societa Italiane et al., 5 Dist. R. 441, is very much like the instant case. There a group withdrew from an incorporated society and formed a corporation with a name similar to that of the original incorporated group. Judge McMichael, of the Court of Common Pleas No. 3 of Philadelphia County, held that the complaint of the latter group to enjoin the new corporation from transacting business should be dismissed. On page 447 he stated:

"The general rule of law is that if a corporation has obtained an existence defacto under color of law, the validity of its formation cannot be attacked collaterally, but only by proper quo warranto proceedings at the suggestion of the attorney general."

The above principles apply equally as well to corporations chartered by the courts as to those chartered by the Governor.

Plaintiffs allege in their petition that the proposed action taken to amend the charters was never given to them and that this is contrary to the National constitution, bylaws, rules and regulations of the Veterans of Foreign Wars of the United States. In a careful reading of this petition we do not find any allegation of fraud upon the part of defendant, although plaintiffs in the trial of this case proceeded upon that theory and now argue in their brief "unquestionably fraud was committed on the court by not fully disclosing to it all the facts".

Under the General Rule of Cancellation of Instruments, 12 C. J. S. §20, a certificate of incorporation pro-

cured by fraud or false representation is subject to cancellation in equity on the relation of the State: State v. U. S. Realty Improvement Co., 132 Atl. 138, 15 Del. Ch. 108.

It is to be noted in that case the bill in equity was brought on the relation of the Attorney General of the State of Delaware, and we are of the opinion this would be so required in the Commonwealth of Pennsylvania.

Judge McMichael in the case of Travaglini et al. v. Societa Italiane et al., 5 Dist. R. 441, 447 had this to say:

"It may be that, in a case of gross fraud upon a court in the obtaining of a charter, the equitable powers of the court could be appealed to, and not in vain, for fraud strikes down and avoids everything, and a chancellor might enforce his decree by the strong arm of injunction and attachment, but the proofs would have to be clear and strong to justify such equitable interference."

We have examined the testimony very carefully in this case and we cannot find any sufficient evidence to sustain a finding that a fraud was committed by this defendant upon the court. In reading the testimony of J. William Richey, which apparently is uncontradicted, it shows that plaintiff organization and intervening plaintiff had actual notice of the proceedings in this court in September 1946 to amend the charter of defendant.

This action is brought upon motion and rule granted and if quo warranto is the proper remedy, the present action has no standing in court.

"Motions are generally appropriate only in the absence of remedies by regular pleadings, and cannot be made available to settle important questions or to dispose of the merits of a case.

. . . . . . . . .

"The summary remedy by motion cannot be substituted for a proceeding by action at law, or by a bill in equity, . . .

"Moreover, a motion or rule cannot be used in the place of a remedy, provided by the legislature, which affords a complete system for the settlement of the controversy in question": 2 Standard Pa. Practice 466, §18.

Complaint is made that defendant did not comply with the Nonprofit Corporation Law in its amendment to the charter by decree dated September 4, 1946, for the reason the newspaper advertisement in the Bedford Inquirer erroneously announced a hearing would be held on the application on September 14, 1946, for approval instead of September 4th when actually held. The advertisement in the Everett Press correctly stated the time. No challenge was promptly made to this procedure but more than nine months elapsed before the present petition was presented for the rule. The law as to articles of incorporation is equally applicable to the amendments to a charter and under section 209 we feel that "a substantial compliance" was made with the statutory conditions precedent to incorporation. Plaintiffs would not have the right to institute proceedings to question the incorporation, but "proceedings may be instituted by the Commonwealth".

In In re Mount Penn Fire Company, 14 Dist. R. 873, the application for charter was not made the day set forth in the newspaper advertisement but at a later date when no objection to the application was made or filed. The court held unless "the delay is so great as to suggest bad faith or raise a fair implication of abandonment of the application" the decree was properly made. A court is not prone to allow a technical defect or a typographical error to challenge its decree and there is no intimation here that there was any bad faith or fraud on the part of anyone insofar as the advertisement is concerned.

After making a thorough examination of the authorities and writings upon this subject, we are satisfied that quo warranto proceedings brought by the Commonwealth are the exclusive and only proceedings available to plaintiffs in the instant matter.

## Conclusions of law

1. Defendant is a duly organized nonprofit corporation under the laws of the Commonwealth of Pennsylvania.

2. The amendments to the charter of defendant organization which were approved by decree of the Court of Common Pleas of Bedford County, Pa., on July 20, 1936, were adopted and approved in accordance with the requirements of the laws of the Commonwealth of Pennsylvania.

3. The amendments to the charter of defendant organization which were approved by decree of the Court of Common Pleas of Bedford County, Pa., on September 4, 1946, were adopted and approved in accordance with the requirements of the laws of the Commonwealth of Pennsylvania.

4. The Nonprofit Corporation Law of May 5, 1933, P. L. 289, 15 PS §2851-209, requires substantial compliance and, therefore, a typographical error in the newspaper notice published in one of the newspapers of the time of hearing on the decree to amend a nonprofit corporation charter is not alone sufficient grounds to set aside the decree otherwise duly entered approving the amendments.

5. The charter of defendant corporation as presently constituted comprising the amendments of July 20, 1936, and September 4, 1946, is a valid enforcible charter in accordance with the laws of the Commonwealth of Pennsylvania.

6. The charter of defendant corporation as presently constituted may be attacked only by quo warranto proceedings instituted by the Commonwealth on the relation of the Attorney General.

7. This is not a bill in equity but even if treated as such, and if plaintiffs have the legal right to proceed without the intervention of the Attorney General, the proof did not show any fraud or imposition on the court of such character as to justify the interference of a chancellor.

8. The rule issued June 10, 1947, is discharged at the costs of plaintiffs.

### Decree

And now, May 28, 1948, the rule issued June 10, 1947, in the instant proceedings is discharged at the costs of plaintiffs.